AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Kansas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  20-6125-GEB
)
APPLE iPHONE 8 PLUS )
SEIZED FROM CLINTON McELROY, )
as further described described in Attachment A )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ District of ___Kansas___, there is now concealed *(identify the person or describe the property to be seized)*:

evidence of violations of 18 U.S.C §§ 2251, 2252, 2252A, and 2425, as described in the Affidavit of Probable Cause and as further identified in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2251 | Production of Child Pornography |
| 18 U.S.C. 2252/2252A | Distribution/Receipt/Possession of Child Pornography |
| 18 U.S.C. 2425 | Transmission of Minor's Information |

The application is based on these facts:

See Attached Affidavit of Probable Cause.

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joshua Bender, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/5/2020

*Judge's signature*

City and state: Wichita, KS

The Honorable Gwynne E. Birzer, US Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

IN THE MATTER OF THE SEARCH OF:

APPLE iPHONE 8 PLUS
SEIZED FROM CLINTON McELROY
AND LOCATED AT THE ELLIS COUNTY
LAW ENFORCEMENT CENTER,
105 WEST 12TH STREET, HAYS, KANSAS

Case No. __20-6125-GEB_____

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Joshua Bender, Special Agent of the Federal Bureau of Investigation, being duly sworn, do hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been so employed as a Special Agent by the FBI since August of 2014. In January 2015, I was assigned to the Salt Lake City FBI Violent Crimes Task Force (VCTF), tasked with investigating bank robbery, carjacking, and violent crimes, and the FBI Child Exploitation Task Force (CEFT), tasked with investigating violent crimes against children. Since May of 2019, I have been assigned to the Kansas City Division, Manhattan, Kansas Resident Agency, tasked with investigating criminal matters.

2. As a Special Agent with the FBI, I have participated in several investigations involving violations of Title 18, United States Code, Section 2251(a) (Production of Child Pornography) and 2252(a)(2) (Receipt/Distribution of Child Pornography), in addition to other extensive criminal investigations. As a Special Agent, I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with authority to execute arrest, search, and

seizure warrants within the meaning of 18 U.S.C. § 2510(7). Throughout my career I have participated in a variety of criminal investigations and participated in the preparation and/or execution of search, arrest, and seizure warrants.

3. As will be shown below, there is probable cause to believe that Clinton Wade McElroy (McELROY) has used a computer device in relation to the production, distribution, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252 and 2252A. I submit this application and affidavit in support of a search warrant authorizing the search of a device found in the possession of McELROY, further described in Attachment A. I seek authorization to examine the device to seize evidence, fruits, and instrumentalities of the foregoing criminal violations, as further described in Attachment B.

4. The information in this affidavit has been communicated to me by other law enforcement investigators and witnesses involved in this investigation, as outlined below. Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included each and every fact known to me or other investigators concerning this investigation. Instead, I have set forth only those facts that I believe are necessary to establish the existence of probable cause to support a search warrant.

## STATUTORY AUTHORITY

5. This investigation concerns alleged violations of 18 U.S.C. §§ 2251, 2252 and 2252A relating to material involving the sexual exploitation of minors, and § 2425, relating to the transmission of information about a minor:

   a. 18 U.S.C. § 2251(a) prohibits employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or who has a minor assist any other person to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or

       mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

b.   18 U.S.C. §2252(a)(1) prohibits knowingly transporting or shipping in interstate or foreign commerce, by computer or mail, any visual depiction of minors engaging in sexually explicit conduct.

c.   18 U.S.C. § 2252(a)(2) prohibits knowingly receiving or distributing distribute, by computer or mail, any visual depiction of minors engaging in sexually explicit conduct that has been mailed, shipped, or transported in interstate or foreign commerce, or knowingly reproducing any visual depiction of minors engaging in sexually explicit conduct for distribution in interstate or foreign commerce by any means, including by computer or the mail.

d.   18 U.S.C. § 2252(a)(4)(B) prohibits knowingly possessing, or accessing with intent to view, one or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction of minors engaging in sexually explicit conduct that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer.

e.   18 U.S.C. § 2252A(a)(1) prohibits knowingly mailing, transporting, or shipping child pornography in interstate or foreign commerce by any means, including by computer.

f.   18 U.S.C. § 2252A(a)(2) prohibits knowingly receiving or distributing any child pornography that has been mailed or shipped or transported in interstate or foreign commerce by any means, including by computer.

g.   18 U.S.C. § 2252A(a)(3)(A) prohibits a person from knowingly reproducing child pornography for distribution through the mail or in interstate or foreign commerce by any means, including by computer.

h.   18 U.S.C. § 2252A(a)(3)(B) prohibits knowingly advertising, promoting, presenting, distributing, or soliciting through the mail, or using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce by any means any material in a manner that reflects the belief or is intended to cause another to believe that the material is or contains a visual depiction of an actual minor engaging in sexually explicit conduct, or an obscene visual depiction of a minor engaging in sexually explicit conduct.

   i.   18 U.S.C. § 2425 prohibits using the mail or any facility or means of interstate or foreign commerce to knowingly initiate the transmission of the name, address, telephone number, social security number, or electronic mail address of another

individual, knowing that such other individual has not attained the age of 16 years, with the intent to entice, encourage, offer, or solicit any person to engage in any sexual activity for which any person can be charged with a criminal offense.

## DEFINITIONS

6. The following definitions apply to this Affidavit and Attachment B:

   a. *"Child Pornography"* includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

   b. *"Minor"* means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

   c. *"Sexually explicit conduct"* applies to visual depictions that involve the use of a minor, *see* 18 U.S.C. § 2256(8) (A), or that have been created, adapted, or modified to appear to depict an identifiable minor, *see* 18 U.S.C. § 2256(8) (C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* 18 U.S.C. § 2256(2) (A).

   d. *"Visual depictions"* include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

   e. *"Child Erotica"* means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

   f. *"Computer"* refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. § 1030(e) (1). This includes devices commonly known as laptops, desktops, netbooks, personal digital assistants, and smartphones, but is not limited to those devices.

   g. *"Internet Protocol address"* or "IP address" refers to a unique number used by a computer to access the Internet.

## INVESTIGATION/PROBABLE CAUSE

7. On or about Tuesday, June 23, 2020, Bloomfield Township (Michigan) Police Department received a report from K.D. that she had discovered an inappropriate online relationship involving her eight (8) year old child, MINOR VICTIM 1. K.D. allowed investigators to examine the device used by MINOR VICTIM 1, and allowed investigators to interview MINOR VICTIM 1.

8. The investigation revealed communications between MINOR VICTIM 1 and SUSPECT ACCOUNT 1 via a video-sharing platform that allowed users to share and comment on each other's content, and to message privately.

9. The communications showed SUSPECT ACCOUNT 1 asking MINOR VICTIM 1 to perform "dirty dares" (sexual or sexualized acts) in exchange for virtual currency in an online video game.

10. As communications continued, SUSPECT ACCOUNT 1 requested MINOR VICTIM 1 to begin using another video/image sharing social media platform to continue their communications. SUSPECT ACCOUNT 1 identified his username, SUSPECT ACCOUNT 2, for the new platform and began messaging MINOR VICTIM 1 on that platform. Via SUSPECT ACCOUNT 2, this user requested MINOR VICTIM 1 send videos showing MINOR VICTIM 1 engaged in masturbation. These communications included directions regarding camera angles, body positioning, and how the minor should manipulate the minor's genitals. These communications also included two voice messages[1] from the operator of the SUSPECT ACCOUNTS.

---

[1] The voice heard in these messages has been identified as CLINTON MCELROY by Ellis County Sheriff's Office Detective Bradley Ricke, who has personally interacted with MCELROY.

11. Investigators also found communications between MINOR VICTIM 1 and the operator of the SUSPECT ACCOUNTS 1 & 2 in Apple iMessage, a messaging application for Apple devices where users can send texts, photos, videos to another iPhone, iPad, iPod Touch, or Mac over Wi-Fi or cellular-data networks.

12. In the iMessage communications, investigators found MINOR VICTIM 1 sent videos of herself topless and without underwear to the operator of the SUSPECT ACCOUNTS via iMessage.

13. In the iMessage communications, investigators observed the operator of the SUSPECT ACCOUNTS 1 & 2 identified an email address, SUSPECT ACCOUNT 3, as his username. That email account was provided through Eagle Broadband (a Vyve Broadband company).

14. Investigators also observed that the operator of the SUSPECT ACCOUNTS sent a gift-card code in exchange for the videos, via another messaging platform.

15. Investigators observed communications beginning roughly May 27, 2020, and continuing until the discovery by K.D., on June 23, 2020.

16. A search warrant was served on the provider for SUSPECT ACCOUNT 3, which revealed the email address was assigned to CLINT MCELROY in Ellis, Kansas.

17. MCELROY is a previously convicted sex offender, having been convicted of Attempted Sexual Exploitation of a Child in Ellis County Case 16-CR-481.

18. A search warrant was served on the provider for SUSPECT ACCOUNT 2, which included content of communications and IP logs, among other information. Within the message content, investigators observed:

    a.    SUSPECT ACCOUNT 2 discussing with another user his contact an apparent[2] prepubescent child, MINOR VICTIM 2, wherein he indicates MINOR VICTIM 2 has shown "perfect pussy" and engaged in live-streaming video of sex acts;

    b.    several instances where SUSPECT ACCOUNT 2 sent pictures of MINOR VICTIM 2, in various states of undress, to the user;

    c.    SUSPECT ACCOUNT 2 provided MINOR VICTIM 2's contact information (for yet another social media messaging platform) to that other user;

    d.    content which showed SUSPECT ACCOUNT 2 gave that other user instructions on how to make contact with children on the video-sharing platform (associated with SUSPECT ACCOUNT 1), noting "there's been a surge of young pussy on [PLATFORM[3]] last couple weeks" and "do google translate. been a surge of lil Russians".

19. The IP addresses for SUSPECT ACCOUNT 2 (pertinent to the above communications) returned to Eagle Broadband. On September 3, 2020, in response to a subpoena, Eagle Broadband identified CLINTON MCELROY in Ellis, KS, as the subscriber for the IP addresses at the pertinent times logged in SUSPECT ACCOUNT 2.

20. Based on the above information, Ellis County Sheriff's Office Detective Bradley Ricke applied for, and obtained, a search warrant for the residence of CLINTON MCELROY. To effectuate the safe and non-destructive execution of the warrant, law enforcement determined to intercept MCELROY in his driveway as he returned home from work (expected to be between 3:30pm and 4:00pm).

21. On September 17, 2020, as law enforcement staged near MCELROY's residence, Det. Ricke surveilled MCELROY, and observed him speaking on a cellular telephone while driving. Rather than proceed to his residence, MCELROY continued south on Washington Street (passing the turn-off towards his residence). Det. Ricke initiated a

---

[2] Law enforcement has not yet confirmed the age or identity of this individual, but the content of communications indicate MCELROY believed this individual to be a minor female, and included MCELROY sending pictures of this individual to another user (and those pictures depicted a prepubescent child).

[3] Affiant does not name the accounts or platforms herein, as the identification of such may alert other offenders.

traffic stop, made contact with MCELROY, and advised MCELROY that he had a search warrant for MCELROY's residence. Det. Ricke asked MCELROY if he had any electronics within his vehicle, to which MCELROY told Det. Ricke his phone was on the passenger seat. Det. Ricke secured MCELROY's phone (an Apple iPhone) from the passenger seat. Det. Ricke recognized the phone as an iPhone (a device associated with the iMessaging platform referenced above).

22. As Det. Ricke raised the phone to eye level, the screen lit up. Det. Ricke observed active messaging or chat (within one of the social media messaging platforms referenced in SUSPECT ACCOUNT 3) with what appeared to be a female.

23. Det. Ricke verified with MCELROY the Apple iPhone located on the passenger seat was his, which MCELROY confirmed. When asked if it was passcode protected, MCELROY answered "yes". When asked for the passcode, MCELROY stated he would like to consult with an attorney before answering.

24. Having observed the iPhone was in an active chat, Det. Ricke believed the phone had not auto-locked. Det. Ricke raised the phone again, which illuminated the display and showed it was still unlocked. To preserve the availability of volatile digital evidence, Det. Ricke selected the phone's "Settings" icon, "Display & Brightness" tab, and set the phone's auto-lock feature to "Never" which would disallow the security code from locking the phone (making retrieval of digital information difficult or impossible). Det. Ricke then secured the phone in his patrol vehicle and plugged it into a charging cable.

25. MCELROY was placed under arrest and placed in the back of an Ellis Police Department patrol vehicle. Before being removed from the traffic stop scene, MCELROY gave permission for law enforcement to relocate his pickup to his residence.

26. MCELROY's Apple iPhone 8 Plus was transported to the Ellis County Law Enforcement Center, were it remains secured (in a Faraday bag) and powered.

27. On September 30, 2020, Det. Ricke contacted the US Attorney's Office to request assistance, and was referred to the FBI. On October 1, 2020, Affiant was assigned to assist.

## CHARACTERISTICS OF CHILD PORNOGRAPHERS

28. From my training and experience, and in conversation with experienced investigators, I have learned the following regarding child pornography offenders:

    a. The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature. In this investigation, MCELROY has a history associated with child exploitation. Additionally, his communications indicate he receives sexual gratification from it, and that his interest is persistent.

    b. The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children. In this investigation, MCELROY's communications include discussion of live-streaming sexual exploitation of minors, as well as child erotica, which is shared with at least one other offender.

    c. The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet-based mediums used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles. Frequently, multiple mediums will be used. In this investigation, MCELROY is known to have used multiple mediums, including email, instant messaging, and social networking as part of his child exploitation activities.

    d. The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the

        subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide. In this investigation, MCELROY has demonstrated his desire to maintain access with children and the child pornography he uses/induces/persuades them to produce..

    e. The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper. In this investigation, MCELROY has maintained contacts across different internet-communication mediums.

29. Affiant asserts that, because of these characteristics, which MCELROY manifests, the device(s) in his possession is likely to contain evidence of his persistent interest in child exploitation and child pornography, as well as evidence of contacts with other like-minded offenders.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensics tools.

31. There is probable cause to believe that things that were once stored on the devices, may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that cellphones are essentially mini-computers. Like computers, files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.

32.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that forensic electronic evidence might be on the devices because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

33.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device(s) consistent with the warrant. The examination may require authorities to employ techniques, including

but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

34. Additionally, because it is unclear which forensic tool or process may work on a given device, examination of the device may require subsequent transfer to another district or state for offsite forensic examination (such as at the Heart of America Regional Computer Forensics Laboratory in Kansas City, Missouri, or at laboratory facilities in Quantico, VA).

35. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

36. Based on the foregoing facts, there is probable cause to believe CLINTON MCELROY has operated the various SUSPECT ACCOUNTS discussed above for the purpose of using, inducing, persuading, enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction (video or live-streaming) of that conduct. Additionally, there is probable cause to believe the mobile device in MCELROY's possession has been used to access and operate the accounts discussed herein. Based on these facts, I submit the Apple iPhone 8 Plus found in MCELROY's possession will likely contain evidence of his, and others, child pornography and child exploitation activities.

37. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the device described above has been involved in the production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252 and 2252A, and that evidence of those criminal offenses will be located on the device described above. I respectfully submit there is probable cause to believe that the device described above has been involved in the transmission of a minor's name and electronic email address to another individual with the intent to entice, encourage, offer, or solicit that other individual to engage in any sexual activity with the minor, whom he knew or believed to be under the age of 16 years, in violation of 18 U.S.C. § 2425.

38. Further, I submit that such evidence, listed in Attachment B to this affidavit, constitutes contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

39. Therefore, I respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

_____
Joshua Bender
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me, TELEPHONICALLY, on this 5th day of October, 2020.

_____
THE HONORABLE GWYNNE E. BIRZER
United States Magistrate Judge

## ATTACHMENT A

The item to be searched is as follows:

APPLE iPHONE 8 PLUS, SEIZED FROM CLINTON McELROY ON SEPTEMBER 17, 2020.

The aforementioned device is currently in the possession of the Ellis County Sheriff's Office, located at the Ellis County Law Enforcement Center, 105 West 12th Street, Hays, Kansas. This warrant authorizes the forensic examination of the devices for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

## Particular Things to be seized

1. Evidence relating to the production, distribution, receipt, possession or access of child sexual exploitation matter, including child pornography, child erotica, messaging about child pornography or child sexual exploitation, and browser history related to child pornography or child sexual exploitation.

2. Any and all visual depictions of minors, and any information that may identify those minors.

3. Evidence showing who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, connection logs, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, contacts, "chat," instant messaging logs, social media profiles, photographs, and correspondence.

4. Evidence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software or evidence of the lack of such malicious software.

5. Evidence indicating how and when the device was accessed or used to determine the chronological context of devices access, use, and events relating to the crime(s) under investigation and to the user.

6. Evidence indicating the device user's knowledge and/or intent as it relates to the crime(s) under investigation, and use of the applications or platforms discussed in the probable cause affidavit which are known to law enforcement.

7. Passwords and encryption keys that may be necessary to access the device or its storage.

8. Records of or information about the device's Internet activity, including browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses, which may relate to the identified crimes.

9. Contextual information necessary to understand the evidence described in this attachment.